**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

**Criminal Action No. 12-cr-00290-MSK**
**(Civil Action No. 13-cv-3516-MSK)**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.

**1.   PIERRE ROSARIO-MOORE,**

      **Defendant.**

_____

**OPINION AND ORDER DENYING MOTION TO VACATE**
_____

**THIS MATTER** comes before the Court pursuant to Mr. Rosario-Moore's Motion For Concurrent Sentence **(# 32)**, Mr. Rosario-Moore's Motion to Vacate **(# 33)** under 28 U.S.C. §2255, and the Government's response **(# 39)**; and Mr. Rosario-Moore's Motion for Pre-Sentence Confinement Credit **(# 42)**, and the Government's response **(# 44)**.

**FACTS**

In July 2012, Mr. Rosario-Moore was charged in a one-count Indictment **(# 1)** with possessing a firearm as a prohibited person, in violation of 18 U.S.C. § 922(g)(1). That charge arose from an incident on April 20, 2102, when Mr. Rosario-Moore brandished a firearm during a "road rage" incident with another driver. In November 2012, Mr. Rosario-Moore agreed **(# 19)** to plead guilty to that charge, in exchange for a recommendation that any sentence imposed by this Court be served concurrently with any period of confinement that Mr. Rosario-Moore was subjected to "in any pending criminal action (including any sentences currently being served)."

Mr. Rosario-Moore waived his right to appeal the sentence or to bring collateral attacks against it, except in limited circumstances. On January 31, 2013, the Court sentenced **(# 30)** Mr. Rosario-Moore to 63 months imprisonment, to run concurrently with a term of imprisonment imposed by the El Paso County District Court in Case. No. 11-cr-3812.

Several months later, Mr. Rosario-Moore filed two motions. The first, entitled "Motion for Concurrent Sentence *Nunc Pro Tunc* With El Paso County Case Number 11CR3182" **(# 32)**, appears to allege that the offenses in that case[1] involved "the same criminal episode and [were] supported by identical evidence" as the instant case. He requests that the Court "run his sentence [in this case] concurrent *nunc pro tunc* to his El Paso County case." Given that the Court already directed that Mr. Rosario-Moore's sentence in this matter run concurrently with his El Paso County sentence, the Court understands this motion to request that he be granted credit against his sentence in this action for the period from imposition of the state sentence on June 18, 2012 to the date this Court imposed sentence in this case on January 31, 2013.

Mr. Rosario-Moore's motion under 28 U.S.C. § 2255 **(# 33)** sought to vacate his guilty plea and sentence, arguing: (i) that he received ineffective assistance of trial counsel because his counsel "failed to investigate and present favorable evidence [regarding] the defendant's mental illness" and that such evidence, if presented at trial, "would have created reasonable doubt in any jury's mind"; (ii) that "because the defendant is mentally ill, he did not knowingly plead guilty"; and (iii) that the Government engaged in prosecutorial misconduct because it "fail[ed] to disclose

---

[1]   The Presentence Investigation Report **(# 23)** indicates that the El Paso County conviction was for Second Degree Assault. The offense arose on November 1, 2011, when Mr. Rosario-Moore, while drinking with the victim, punched the victim repeatedly and then struck him repeatedly in the head with a hammer. He was sentenced to a 6-year term of imprisonment on or about June 18, 2012, and the Presentence Investigation Report anticipated that he would be eligible for release on parole as early as October 15, 2014.

to the defense . . . mental health reports, doctors' reports, and testimony regarding the findings [in such reports]."  (As to the final argument, Mr. Rosario-Moore states that these mental health records "should have been turned over to the defense . . . because they were mentioned in the probation office presentence investigation reports prepared for the court.")

More recently, Mr. Rosario-Moore filed a "Motion for Pre-Sentence Confinement Credit" **(# 42)**.  That motion argues that, upon his arrest in the instant case, he was "confined to the El Paso County Jail pending entering a plea of guilty."  (In the subsequent sentence, he states that "There is a substantial nexus between the confinement in the El Paso County Jail and the charge or conduct for which credit is sought.")  He calculates that he was confined for a period of 246 days between his arrest and sentencing and argues that, pursuant to C.R.S. § 18-1.3-405, he is entitled to receive credit for that period of time.  It is not entirely clear to the Court whether he is seeking credit against his state or federal sentence; the relief he requests is that this Court "issue an amended mittimus to the Department of Corrections with instructions to apply the full amount of time credited to the Defendant's sentence."

## ANALYSIS

### A. Standard of review

Consistent with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the Court has liberally construed Mr. Rosario-Moore's *pro se* filings.

### B. Motion to Vacate

The Court turns first to Mr. Rosario-Moore's motion to vacate his plea and sentence.  As the Court understands that motion, Mr. Rosario-Moore raises three issues: (i) the Government engaged in "prosecutorial misconduct" by not turning over discoverable materials regarding Mr.

Rosario-Moore's mental health status; (ii) Mr. Rosario-Moore's trial counsel was ineffective in not investigating and advising Mr. Rosario-Moore of the possibility of a successful diminished capacity defense to the charge against him; and (iii) Mr. Rosario-Moore's plea was not knowing or voluntary due to his mental illness.

Turning first to the "prosecutorial misconduct" claim, Mr. Rosario-Moore essentially alleges a *Brady* violation – that is, that it failed to produce evidence in its possession that was favorable to Mr. Rosario-Moore. A defendant seeking to show a *Brady* violation bears the burden of showing: (i) that the Government failed to produce to the defense evidence that was in the Government's possession; (ii) that the evidence was "favorable" – in other words, that it was exculpatory or impeaching; and (iii) that the evidence was "material" – that there is a "reasonable probability" that, had the evidence been disclosed, the result of the proceeding would have been different. *U.S. v. Erikson*, 561 F.3d 1150, 1163 (10th Cir. 2009). It is not sufficient for the defendant to state a mere suspicion that there was evidence that was not disclosed or to identify evidence that may exist <u>somewhere</u>; the defendant must show that the material in question was actually in the possession or control of the prosecution. *Id.* Moreover, the defendant may not rely on the Government's failure to disclose evidence that the defendant himself knew of or to which the defendant had equivalent access. *Id.*

Here, Mr. Rosario-Moore has offered only a skeletal identification of the evidence he contends was withheld, describing only unspecified "mental health reports, doctors' reports, and testimony regarding the findings in their reports." A liberal reading of the motion suggests that Mr. Rosario-Moore may be referring to documentation considered by the Probation Office in the preparation of the Presentence Investigation Report. That document discusses Mr. Rosario-

4

Moore's mental health history in some detail, based on Mr. Rosario-Moore's own self-reporting ("The defendant explained that since age 15, he has experienced extensive mental health problems," "The defendant said that ten years ago, he was receiving mental health services from the Community Health Center . . . ."); a "previous presentence report" prepared in conjunction with a prior federal case; records from "Correctional Healthcare Companies" regarding "the defendant's recent incarceration in El Paso County in 201 and 2012"; and records from "Peak Vista Community Health Centers."  The report also makes reference to "Federal probation office records," but only to the extent that "the defendant was referred for contract mental health services."

However, Mr. Rosario-Moore does not provide any non-conclusory assertions that establish that the prosecution was actually or constructively in possession of these records prior to his plea.  Mr. Rosario-Moore appears to <u>assume</u> that, because the Probation Officer was able to obtain the records during the preparation of the Presentence Investigation Report <u>after</u> his plea had been entered, the prosecution must have had those documents <u>before</u> the plea, but he offers no actual evidence to establish such a contention.  With the possible exception of the prior Presentence Investigation Report, none of the documents in question would be particularly relevant to the actual charges against Mr. Rosario-Moore.  Thus, the Court finds that Mr. Rosario-Moore has not established that the prosecution actually possessed the documents in question.

Even if he had shown possession of the documents by the prosecution, Mr. Rosario-Moore further fails to demonstrate that the records in question were not also and equally available to him.  *See Spears v. Mullin*, 343 F.3d 1215, 1256 (10th Cir. 2003) ("there can be no

suppression by the state of evidence already known by and available to the defendant prior to trial"). Indeed, the records concern mental health treatment Mr. Rosario-Moore received, and according to the Presentence Investigation Report, Mr. Rosario-Moore himself was the primary source for much of the discussion of his mental health history. Some of the records recited in that report were obtained from mental health clinics that, arguably, would have been amenable to producing them to Mr. Rosario-Moore upon his request, through a signed release, or, at worst, a subpoena from Mr. Rosario-Moore. Others, like the Presentence Investigation Report in the prior case, were undoubtedly available to Mr. Rosario-Moore or his agents. All told, the Court finds that even if some of the mental health records in question were in the actual or constructive possession of the prosecution, Mr. Rosario-Moore has not shown that he lacked meaningful access to them as well. Accordingly, Mr. Rosario-Moore's motion to vacate based on alleged *Brady* violations is denied.

Mr. Rosario-Moore's second contention is that his counsel rendered ineffective assistance by not inquiring into a potential defense of diminished capacity. To establish a claim of ineffective assistance, Mr. Rosario-Moore bears the burden of demonstrating both that: (i) his counsel's performance fell below the standard of objective reasonableness, and (ii) that but for counsel's error, there was a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-694 (1984). Assuming, without necessarily finding, that Mr. Rosario-Moore is correct that his trial counsel failed to adequately investigate the availability of a diminished capacity defense, Mr. Rosario-Moore's motion does not allege any facts that would show that such a defense was indeed colorable, much less that the defense was sufficiently probative as to raise the reasonable probability that

Mr. Rosario-Moore could have be acquitted at trial. Notably, even Mr. Rosario-Moore's motion fails to articulate any specific details about his mental state prior to, during, or after the April 2012 incident that gave rise to the charges here, much less attempt to demonstrate how his mental condition could be said to establish a potential diminished capacity defense. In the absence of such evidence, Mr. Rosario-Moore fails to demonstrate the second element of the *Strickland* test.

Mr. Rosario-Moore's failure to isolate this argument to the time period in and around April 20, 2012 and the broad and conclusory assertions in the motion suggest that Mr. Rosario-Moore is not necessarily alleging that he was suffering from a diminished capacity on the date of the incident. Rather, a fair reading of his motion seems to suggest that he may be raising the more general contention that his counsel erred in not presenting a full picture of Mr. Rosario-Moore's entire history of mental health treatment for sentencing purposes. To the extent this is Mr. Rosario-Moore's argument, the record reflects that his counsel extensively raised the issue of Mr. Rosario-Moore's fluctuating mental health status during sentencing: "Mr. Rosario here is a person who lacks stability throughout his entire life and that stability and lack thereof has been critical involving his mental health issues . . . ." The Court also commented on Mr. Rosario-Moore's mental health history when imposing the sentence, but found that "there is nothing before me that suggests that it was mental illness that drove this behavior." Thus, the Court cannot say that Mr. Rosario-Moore's counsel failed to adequately address Mr. Rosario-Moore's mental health history as a factor to be considered by the Court during sentencing.

Finally, the Court turns to Mr. Rosario-Moore's third argument: that his guilty plea was not knowing or voluntary. This "argument," raised only in passing in a single sentence, is not

well-developed. Mr. Rosario-Moore does not, for example, specify what circumstances caused him to enter the plea involuntarily or indicate what rights he failed to understand that he was giving up by pleading guilty. Nevertheless, the Court engaged in a lengthy colloquy with Mr. Rosario-Moore at the change of plea hearing, advising him of his various rights and ensuring that the decision he was making to plead guilty was informed and not the result of pressure placed upon him by anyone else. Mr. Rosario-Moore offers no explanation here for why his answers at the time of the plea hearing differ from the assertions of coercion or lack of knowledge that he attempts to assert here. Accordingly, the Court finds no basis to relieve Mr. Rosario-Moore of the consequences of his plea.

Accordingly, Mr. Rosario-Moore's motion to vacate is denied in its entirety.

### C. Motions for adjustment of sentence

Mr. Rosario-Moore remaining motions are somewhat unclear. As best the Court can determine, Mr. Rosario-Moore requests that his sentence in this action, imposed on January 30, 2013, be deemed to commence running *nunc pro tunc* to June 18, 2012, the date he was sentenced in the El Paso County action. The effect of this would reduce the term of the sentence imposed by this Court by approximately six months.

Mr. Rosario-Moore does not identify a procedural mechanism by which the Court may declare a sentence it imposes to commence running *nunc pro tunc* to an earlier date. Even if such a mechanism existed, this Court would not exercise it. Indeed, at the time it sentenced Mr. Rosario-Moore, the Court rejected his request for a 51-month sentence at the bottom of the applicable Sentencing Guideline range, and instead selected a 63-month sentence at the top of that range, explaining:

> This is an unusual situation in which the sentence that is imposed in the state court action appears to drive the reasoning of both the defense and the Government in this case. That is because, apparently, in the state court there was in conjunction with another offense, an agreement reached that the two sentences would run concurrently. Unfortunately, I don't have the benefit of the reasoning behind that or why the judge chose to do that or what was considered in conjunction with that sentence. And I must candidly admit that absent that argument being made, one of fairness to Mr. Rosario Moore, I wouldn't be inclined to give a concurrent sentence here.
>
> The conduct that gave rise to the conviction in the state court was different conduct than the conduct here. Both instances and offenses were extremely serious. Both of them deserve to be punished. Both of them demonstrate a need to protect the public.
>
> However, I am sensitive to the fact that there apparently were expectations created in the negotiation of something in the state court. And the question is, in light of a purported overlap of sentences if concurrent of 15 months, would the sentence here be appropriate? Now, no one has asked for an upward variance or a downward variance, but if I were to impose a top of the guideline sentence of 63 months and 15 months was to be concurrent with the state court's sentence, in essence, it would be a 48-month sentence for this conviction in this court, giving credit, of course, for the concurrent part of the sentence.
>
> . . .
>
> Bottom line here, only in deference to the stipulation of counsel am I willing to impose a concurrent sentence. That concurrent sentence must be at the top of the guideline range to reflect the seriousness of the offense, and particularly, to protect the public from further crimes by the defendant.

Given that this Court expressly chose to impose the longest-possible sentence within the Guideline range to mitigate some of the effects of the concurrent sentence, the Court is hardly amenable now to a request by Mr. Rosario-Moore to shorten his federal sentence further. This Court remains convinced that the longest possible federal sentence remains necessary to

effectuate the purposes of 18 U.S.C. § 3553(a).  Thus, assuming that the Court is empowered to reduce the sentence, it declines to do so.

Mr. Rosario-Moore's remaining motion requests pre-sentence confinement credit of 246 days, apparently reflecting the time spent in state custody between his arrest on the instant charges on April 20, 2012 and his sentencing on those charges on January 31, 2013.[2]  Mr. Rosario-Moore's motion invokes C.R.S. § 18-1.3-405, a statute that applies to computation of <u>state</u> sentences.  Because this Court lacks any apparent authority in this proceeding to modify the sentence imposed by the state court, the Court assumes that Mr. Rosario-Moore's motion is seeking an adjustment of his <u>federal</u> sentence to reflect his pre-sentence confinement.

The federal statute governing credit for pre-sentence confinement is 18 U.S.C. § 3585(b).  The Supreme Court has held that the task of computing the amount of pre-sentence credit that a defendant is entitled to under that statute falls to the Federal Bureau of Prisons, to be exercised by the Attorney General of the United States, and that the District Courts are not empowered to calculate or award pre-sentence credit.  *U.S. v. Wilson*, 503 U.S. 329, 334 (1994).  As *Wilson* explains, the Bureau of Prisons maintains an administrative procedure by which requests of pre-sentence credit are considered.  *Id.* at 335, *citing* 28 C.F.R. § 542.10 *et seq*.  Thus, because the Court construes Mr. Rosario-Moore's motion as one seeking adjustment of his federal sentence, the Court denies the motion in deference to Mr. Rosario-Moore availing himself of whatever administrative remedies are available to him.

## CONCLUSION

For the foregoing reasons, Mr. Rosario-Moore's Motion For Concurrent Sentence **(# 32)**,

---

[2]  The Court computes that term as being 285 days.

Motion to Vacate **(# 33)**, and Motion for Pre-Sentence Confinement Credit **(# 42)** are **DENIED**. To the extent Mr. Rosario-Moore seeks a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(1)(B) in conjunction with his Motion to Vacate, the Court has *sua sponte* considered the pertinent standards and finds that Mr. Rosario-Moore has not raised a substantial showing of a denial of a constitutional right. Thus, a Certificate of Appealability is **DENIED**.

Dated this 15th day of April, 2015.

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge